I would like to talk about the revocation decision and the process by which the proceedings occurred below. The decision below is the result of impermissible burden shifting, an improper application of the law as it applies to constructive possession. This court held in U.S. v. Carrasco that constructive possession requires when more than one person has access to the locale, that the government prove that the defendant had knowledge and both power and intention to control the item at issue. In this case, and I'll direct the court to the excerpts of Record 20, the district court, instead of requiring the government to prove knowledge, shifted the burden to Mr. Hudson and stated there is no proof that he didn't have knowledge. That's impermissible. Mr. Hudson had no obligation to prove anything. That fell on the government and regardless of whether it was a preponderance standard, which is the appropriate standard in a revocation proceeding, the government still carries that burden. At the end, did he assess all the evidence at the end or did they just kind of go through it? He did assess all the evidence. At the end? At the end, but he did so with an incorrect, and that's what I'm referring to, he did so apply incorrect application of the law and if I could address the district court's analysis, when it addressed constructive possession, it essentially said, and I'll direct the court to excerpts of Record 20 through 23, the residence was under Mr. Hudson's control. Therefore, I think he had possession of the firearms and the items found in the closet. Did the district court have to expressly make a finding that it was knowing? I mean, the district court essentially says when the gun is found in the bedroom that he's sleeping in, they go with his possessions in. A letter from the public defender that represented him, social security cards and the like, is a reasonable inference, sort of preponderance of the evidence, that he knowingly had possession of it. I mean, that was the effect of the court's ruling. The court didn't make an express finding about knowing, but apparently says that's a reasonable inference. It was an inheritance, so it wasn't harmless. Why wasn't it harmless? It was an inheritance and it wasn't harmless because under the circumstances of this case, the items were found in a closet that was a shared bedroom, but there was no evidence that Mr. Hudson had knowledge of what was in the closet and the best evidence the government could come up with was a probation officer who said, well, there was a belt that was attached to me, perhaps, and the probation officer who found the gun and in a sock, when asked why he thought that was a male sock, his response was, I'm a man and I wear socks. So we have this case which I guess the government cited, it's called Terry, where the evidence there was there was a gun in a shelf in the closet in a bedroom shared with his wife along with men's clothes, so it didn't really go too much further than that. How do you distinguish that case? Terry is distinguishable because there, the defendant admitted, and it was part of the record in the court's opinion, that his wife had received that gun as a gift. We don't have that type of connection here. We don't have any evidence or testimony that Mr. Hudson actually knew about that gun, and that's what distinguishes Terry. We don't have that. I'll say I'm in favor of that. As a director, he suggested to me that he didn't know. The confidential sources statement from April 2015, that Hudson had a firearm, the CIA statement that Hudson defends the small blankets over firearm, the gun was found in the closet where it was undisputed that he slept in that room with his girlfriend. There was mail bundling in and about the closet. There was a knife found in the safe where there was also a letter from Hudson's former probation officer, a lady. The gun was found in a mail tube sock, and his girlfriend stated to the probation officer that she would never allow any firearms in her home, which is evidence that it wasn't hers. It must have been his. How do you counterpoint, to me, that small circumstantial evidence that compels the conclusion that he didn't know, that he did persist? And those types of references all go to our challenges to the way that the proceedings happened below. Many of the sources' allegations that the court just enumerated were allegations that this court now knows, but the defense attorneys who were representing Mr. Hudson at the district court didn't know. So the fact that we were not able to challenge the sources' motivations, reliability, resulted in these proceedings being fundamentally unfair. We now know that the sources' information regarding the guns being in the trunk of his car, shortly after that allegation, and she said he always carries a gun. His former wife. Former wife. Former wife. Wasn't living in the place. That's correct. We now know, which we didn't know at the time of the hearing, that police actually stopped and searched his car and found no gun. I wasn't sure what that part of the briefs was going to, because the facts that were faced down in the room did not seem to be disputed. So whether or not, I guess, Powell could have been impeached. I mean, Goldner, I don't think there was any suggestion that she was going to be impeached. But whether or not Powell could be impeached didn't seem to affect what was found in the evidence that the district court relied on. So I wasn't sure where that was all going to. And I disagree with that, because the district court, several times in addressing what supported the findings of the session, the district court first talked about how long ago these things were alleged to have happened. And the district court said, look, if he had gotten, no matter when she said it happened, I tend to believe that time isn't going to change that. So the district court's putting reliability on her. And that was the former wife. The former wife. And that's on page 16 of the record. Page 17 of the record. The fact is, in effect, the decision that there was a gun in a tube socket in the closet where he was sleeping. And the district court thought that, for Congress, that he constructively possessed the gun. In our standard, which is, we're supposed to give the evidence that's most favorable to the government. Because the very person who put the gun in Mr. Hudson's possession, allegation-wise, we were not able to explore, impeach, show motivations and bias for sharing that information. We had no ability to refute what the district court was relying on. But what difference does it make when they found the gun in the closet? It makes a tremendous difference because the government never shared knowledge. So in a constructive possession case, the government has a more difficult burden. The only person that could have supported that finding that the district court relied on was the source. And we couldn't explore that. If Mr. Hudson's going to be put away in jail for two years for constructively possessing something that the government didn't acknowledge on, the defense should have the opportunity to challenge those allegations that the district court clearly gave credibility and reliability to. So your position is absent testimony from Ian's wife, the estranged wife, with no reasonable prior fact could have found that he knew that there was a gun in his closet? I'm not saying that. Is that what you have to say? I don't think that it is. What we asked for, for the chronological records, that showed that she had given information that the probation officers could not confirm, repeatedly. But we didn't have that information. So how can we argue to the district court that these allegations can't be trusted when we don't have the information? But you said that at the hearing, you had, there were seven pages of the chronology. Five. We're turning it over. Why wasn't that the solution? Because that didn't provide the impeachment materials and the attacks that I set forth in the briefs that show she had no credibility. All day long. I'm sorry. No, you finish. You finish. I'm sorry to interrupt. Where did you get the chronology records? So we received five pages at the hearing, after Paul testified. The district court placed the remainder under seal for purposes of appeal. I moved this court unsealed. The district court, the government didn't oppose, so now that they are unsealed, now I as an appellate counsel have more information than the defense counsel did below, as does this panel. All we wanted was a fair opportunity to challenge the actual chronological records. Has the judge's in-camera review of the entire chronology cured any problems for you? I mean, we have to rely on the district judge. He's been here. He's looked at everything and made a rational determination as to what was helpful to your client in order for that part to be turned over and taken care of appropriately. It doesn't, and respectfully to the district court judge, we've identified in the briefs the ways in which he would have used that information to challenge the reliability of source that the district court and the probation officer put information on. It's not the district court's duty to look through the record to determine how it would have prosecuted this case or defended this case, but we've shown to the court how we would have used that information. All we wanted was a fair opportunity to put the government to its burden, and the district court shifted that burden, stripped knowledge from that burden. It did not. The government's position below initially was this should be turned over. There's grating nuclear information in there. When the district court advised the probation department to withdraw that petition, the first one, it did. The second time around, a different petition, same evidence. The government took the position that it was in the court's possession. Probation took the position that it was in the court's possession, and the court declined to give us that information. I don't know why because we now have it, so it's too late. You've got a little different situation here that comes up in the context of a criminal trial because the criminologists were really not in the position of the government that is the U.S. attorney. There are documents created by probation, which is part of the court. So they were never in the possession of the government in the same sense that grating your nuclear material would be in the context of a criminal trial where you're looking at investigating the information. I understand the court's question, but I would liken it to when the government prosecutes a case from a police agency or a federal agency. The government has the obligation to go and inspect and make sure that there isn't information to which the defendant is entitled. In other cases, the government turns these documents over. The defense attorney below saying to the district court, we've gotten these chronologies before. I have no understanding of why they were withheld here. But they should have been, to some extent. You wanted it by the earlier time. I'll give you a minute, very quickly. Thank you so much. Good morning. Let's hear from the defense attorney. We're a police court in the United States. This isn't the first time that this court has had to grapple with a probation officer's trial being requested in a revocation proceeding here. The confidential source came nowhere here. The court bringing the credibility of the confidential source was not an issue in the proceedings. Well, the chronology was what you had it X'd out. It was locked down to me. Right. That could have been done, but the district court did the functional equivalent of that by taking the chronological records in camera and reviewing them and releasing what was relevant and helpful to the defendant. Arguably, but in this case, when the informant was not a witness, the probation officer proceeded upon their own investigation where they conferred a violation of the two vehicles and the defendant's residence, getting it undisclosed in his monthly reports. It was clear that the probation officer had to be contented for reasons he's finished to conduct the search. When I looked at these, when I looked at the chronology reports, the whole package wasn't there. There was a lot there that I think would have been useful to the defense attorney. And how did the district court, what the district court provided? That was just a small fraction. But they were able to- Five pages. A small fraction, but they were able to essentially cross-examine a witness who never appeared. An exhaustive cross-examination about this informant whose relevance was arguably not even an issue, where they were able to impeach the probation officer about things that they were not able to corroborate. I got a complaint at one of the bars. The inability of the probation officer to corroborate that the defendant went to the local dollar here, not at the Elks Lodge. And other information, the wrong address that the source had provided to the probation officer. But what really mattered was that the probation officer confirmed a violation that's important in and of itself. I would say to the court, the probation officer's independent search is- In making the determination that Mr. Henson had constructive possession of the gun that was found in his room, did the district court rely on facts that were in the probation officer's notes but were not disclosed to the defense? No, Your Honor. The district court relied upon the circumstantial evidence surrounding the recovery of this firearm and the knife, in addition to the gun, in the defendant's master bedroom, where the defendant, there was no dispute that he lived in the residence that shared the master bedroom with a significant other. Was there a dispute over whether he used the closet in his room? That was highly disputed, Your Honor, whether or not he used the closet. But I will submit that that's immaterial as to whether or not the rational prior fact here at the district court could have found by a preponderance of the evidence that he knowingly possessed it. In fact, the court, in use of terminology, inserts a record 21, the gun would not have been there without his knowing it was there. In response to Your Honor's earlier question about the knowledge requirement here at the court, which the court is presumed to have knowledge of the law and heritage, expressly stated that it doesn't apply to the elements that are required. So yes, the closet, though, in response to Your Honor's question whether or not the defendant shared or had access to the closet, was highly disputed with the evidence that there was. Your Honor, the knife was found in a, it was described as a safety box or a safe of some sort where, in which the defendant's children and, I believe, his significant other's children's social security cards were also maintained. And also, I'm not sure if in the safety box or somewhere else in the closet, a letter from the defendant's former federal public defender was also in this closet. I'm just not interested to know. That was never, I mean, unfortunately, the probation officers did not collect the letter. I think they photographed it here, and unfortunately, I think the photograph just showed the return address, and it didn't have the delivery address. It did show the probation officer's name. It showed the federal public defender's name. The federal public defender was ready to speak to that. The name of the federal public defender was his former attorney. I don't believe so, Your Honor. I don't believe there was any dispute, I think, whatsoever. It was, there was some discussion or dispute as to whether or not, in some statistical probability, that could have been addressed to some other individual other than to the defendant living in this residence, in his master bedroom, in a closet that he arguably shared with his significant other. There's no question that he violated the terms of his supervised release by reporting to counsel, I guess. In the form of a statement? No, Your Honor, I don't believe there was any, and I don't believe that was a dispute, and I think it was, the argument wasn't. It was a technical violation. Everybody voted for Andrew. I think the district court certainly had discretion to guess, and I don't think there was any dispute that that had been, it was basically stipulated to, in a roundabout way, I would submit that Andrew violated some of the other terms of his supervised release. Arguably, yes, Your Honor, I don't, we're not here on that particular issue, but I would submit that, yes, that was. Was there any grounds for which they would have voted for Andrew? The district court voted for Andrew. Yes, Your Honor. Yes, Your Honor. I don't believe there was a technical ground. It was one of the grounds argued and found out that. The only reason it was revoked was because of Andrew. Yes, Your Honor. Yes, Your Honor. Moving on, with respect to the recusal issue here, there's no, there's nothing in the record to show that the experienced district judge who had this revocation proceeding had any reason to recuse himself from this matter. Reading through the transcript, it's pretty clear that the district court had its hands full, had to work hard just to keep things in order throughout this two-day revocation proceeding, which the court said it was one that should have only taken about a half a day. The defendant's claim that the district court was, had re-judged the merits of the revocation matter and was not impartial as belied by the transcript from the hearing, which shows that the district court gave substantial latitude to the defendant in cost examining before probation officers who testified in this matter. The only area that the district court placed off limits related to the defendant's questions, which were designed to expose the identity of the confidential source that the probation officers received information from. The transcript shows that the district court spent considerable time throughout this two-day hearing trying to keep defense counsel from answering multiple questions about the confidential source and request demanding materials that would expose the identity of this confidential source as far as the communication. Was there an objection to turning over the name of the confidential source? There was, the AUSA wrote a response to the motion. Did not object on the grounds that, first of all, the AUSA said in the motion that he did not have access, did not have the materials, could not provide them. His former, his counsel, my colleague just said, I think the motion said something along the lines that it might be considered brainy and illegal material. However, just as a matter of law, with that type of material not being in the possession of the government, it could not be considered brainy or illegal material. And the court's being careful about the client holding still disclosure of these chronologies because of the chilling effect on the probation officer's keeping frame records. It seems to me that they've got to be careful about the extent to which they allow the discovery of these chronologies. In that background, it seems to me that the judge here did exactly the right thing by revealing them in camera. Because as you can see, I think the courts that they fell for Yes, Your Honor, the government agrees with that. The first principle that, Your Honor, is the confidentiality of the records. As I understand it, it's an arm of the courts. They're confidential, as I understand the law. And in this case, you have the additional overlying principle that there is a confidential source, which this court produced just as a general principle. This court's discretion not to reveal the identity of the confidential source, which was important due to all this material in camera, and made such a decision. I submit that it's discretion. I say my time has rapidly elapsed. Unless there are any other questions, I submit the honor to Your Honor Thank you, Your Honor. If I could just address the first question about the technical violations regarding the cars. If this had just been a revocation on the cars, under U.S. v. Tometo, this would require a remand because his violation would go from a grade B violation to a grade C violation, and his guideline range would lower. We did contest that those violations occurred, but we did say, if anything, they're technical violations. With regard to confidentiality of the chronologies, the guide to judiciary policy states these chronos are to be prepared for judicial review. They are to have the who, what, where, when, why. They are exactly the type of information that courts and parties should be able to rely upon when situations like this exist. And I disagree that the district court did the best it could. And I direct the court to page 863, which is part of the chronos, where LaTosha Hardwick said to one of the probation officers during the search, when she was told that the gun was found and Mr. Hudson was arrested for it, her response was, even if the gun wasn't his, that doesn't identify the confidential source. It gives information that Mr. Hudson would have used in supporting his allegation or his position that he didn't know that there was a gun there. So, in addition to the fact that we knew who the source was, that had nothing to do with the source. The district court didn't do everything that it could do. It could have excised the source's name and given us everything. At the very least, that's what should have been done here. I appreciate your time. Thank you very much. Thank you, counsel. I appreciate your arguments. This matter is submitted.
judges: Paez, Ikuta, Faber